IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-01400-PAB-KMT

IN RE THE APPLICATION OF ANTHONY LEIGH STEAD,

Plaintiff/Petitioner

v.

DAVINA MENDUNO,

Defendant/Respondent.

---

**ORDER**

---

This matter is before the Court on Petitioner's Motion to Preclude Irrelevant Expert Report(s) and Testimony [Docket No. 29].  The Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331.

Petitioner Anthony Stead, a citizen of New Zealand, seeks the return of A.C.S., the son of petitioner and respondent.  Docket No. 1 at 1, ¶ 1.  Petitioner has filed a Petition for Return of a Child pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention") and the International Child Abduction Remedies Act ("ICARA").  22 U.S.C. §§ 9001-9010.  Respondent raises the affirmative defense that returning A.C.S. to New Zealand would result in grave risk of either physical or psychological harm or would otherwise place A.C.S. in an intolerable situation.  Docket No. 17 at 6, ¶ 2.  Petitioner filed his motion before respondent had designated an expert witness for the evidentiary hearing.  He did so based on respondent's stated intention, *see* Docket No. 25 at 10, to introduce expert testimony.

Docket No. 29 at 2.  On November 24, 2014, respondent filed a witness list identifying

Dr. Andrew Loizeaux, presumably to provide expert testimony as to the psychological

effects of returning A.C.S. to New Zealand.  Docket No. 39 at 1.

## I.  LEGAL STANDARD

### A.  Rule 702

Rule 702 of the Federal Rules of Evidence provides that:

> A witness who is qualified as an expert by knowledge, skill, experience,
> training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will
> help the trier of fact to understand the evidence or to determine a fact in
> issue; (b) the testimony is based on sufficient facts or data; (c) the
> testimony is the product of reliable principles and methods; and (d) the
> expert has reliably applied the principles and methods to the facts of the
> case.

Fed. R. Evid. 702.  Petitioner does not contest the reliability of a potential expert

opinion, only its relevance.  Relevance in the Rule 702 context is determined by Rule

401, which defines relevant evidence as evidence that "has any tendency to make a

fact more or less probable than it would be without the evidence" and "the fact is of

consequence in determining the action."  Fed. R. Evid. 401; *see also Bitler v. A.O.

Smith Corp.*, 400 F.3d 1227, 1234 (10th Cir. 2004) (defining relevance under Rule 702

by reference to Rule 401).  The proponent of expert testimony bears the burden of

establishing its admissibility.  *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d

965, 970 n.4 (10th Cir. 2001) (citations omitted).

The analysis of relevance under Rule 401 requires a court to undertake two

inquiries.  The first is a procedural question which derives from Rule 401's identification

of "evidence having any tendency to make the existence of any fact . . . more probable

2

or less probable than it would be without the evidence." *Id.* This inquiry focuses on "whether the evidence is probative or factually relevant to the proposition asserted." *Sims v. Great Am. Life Ins. Co.*, 469 F.3d 870, 881 (10th Cir. 2006). The second inquiry, whether the evidence is "of consequence to the determination of the action," asks the substantive question of whether the proposition for which the evidence is offered is properly provable in the case. *Id.* To assess the relevance of proffered expert testimony, the Court must "look at the logical relationship between the evidence proffered and the material issue that evidence is supposed to support to determine if it advances the purpose of aiding the trier of fact." *Bitler*, 400 F.3d at 1234.

## B. The Hague Convention

"The Convention[1] and ICARA serve, in part, to prevent parents from abducting children in order to avoid the jurisdiction of courts with whose rulings they do not (or believe they will not) agree." *Shealy v. Shealy*, 295 F.3d 1117, 1121 (10th Cir. 2002). "The treaty and legislation seek to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court." *Id.* (quotation omitted). The scope of inquiry under the Convention "is limited to the merits of the abduction claim," not any underlying custody disputes. *Id.* (quotation omitted). "In a case arising under ICARA and the Hague Convention, the district court must determine whether the removal of a child was 'wrongful' under the definition set forth in the Convention." *Id.* at 1121-22.

Article 3 of the Convention outlines when the removal or retention of a child is

---

[1] *Available* at http://www.hcch.net/upload/conventions/txt28en.pdf. All citations to "Articles" are to articles of the Convention.

wrongful.  Pursuant to Article 3:

> The removal or the retention of a child is wrongful if:
>
> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
> (b) at the time of the removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Whallon v. Lynn*, 230 F.3d 450, 454 (1st Cir. 2000).  No wrongful removal exists without the possession of custodial rights by the parent seeking the child's return.  *Gonzalez v. Gutierrez*, 311 F.3d 942, 948 (9th Cir. 2002).

If the petitioner establishes wrongful removal, the Court "shall order the return of the child forthwith," Article 12, unless certain exceptions under Articles 13 and 20 can be established by the respondent.  22 U.S.C. § 9003(e)(2).  The exception relevant to this case is found in Article 13(b) and applies where "there is a grave risk" that return of the child "would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation" (the "grave risk exception").  Respondent has the burden of proving that the grave risk exception applies by clear and convincing evidence.  22 U.S.C. § 9003(e)(2)(A).

The exceptions are to be construed narrowly since "[t]he Convention establishes a strong presumption favoring return of a wrongfully removed child."  *Danaipour v. McLarey*, 286 F.3d 1, 13-14 (1st Cir. 2002).  Defenses may not be used "to litigate or relitigate the child's best interests," *id.* at 14, nor are they established by simply demonstrating the "adjustment problems that would attend the relocation of most

4

children." *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996).

## II.  ANALYSIS

Petitioner's motion seeks to prohibit respondent "from unnecessarily increasing the expense and burden of this litigation by introducing irrelevant expert reports and testimony."  Docket No. 29 at 1.  Petitioner's attempt at wholesale rejection of expert testimony suggests that he did not review the Court's Practice Standards before filing his motion.  Practice Standard III.G concerns motions to exclude expert testimony.  *See* Practice Standards (Civil Cases), Judge Philip A. Brimmer, § III.G.  It requires that a Rule 702 motion "shall identify with specificity each **opinion** the moving party seeks to exclude" (emphasis in original).  As the court explained in *United States v. Crabbe*, 556 F. Supp. 2d 1217 (D. Colo. 2008), "the Rule 702 determination [is] more *opinion-centric* than *expert-centric.*"  *Id.* at 1221 (emphasis in original).  Nonetheless, given the expedited nature of these proceedings and the lack of any available expert report at the time petitioner brought his motion, the Court will consider petitioner's challenge to the relevance of expert psychological testimony in this matter.

The Sixth Circuit has indicated that a grave risk of harm can only exist in two situations.  *See Friedrich v. Friedrich*, 78 F.3d 1060 (6th Cir. 1996).  "First, there is a grave risk of harm when return of the child puts the child in imminent danger *prior* to the resolution of the custody dispute–*e.g.*, returning the child to a zone of war, famine, or disease.  Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child

5

adequate protection.  Psychological evidence . . . is only relevant if it helps prove the existence of one or these two situations" *Id.* at 1069 (emphasis in original).  While the Tenth Circuit has not explicitly adopted the standard outlined in *Friedrich*, it has noted that the grave risk exception imposes a "strict demand" on the party claiming it and that "'[g]rave risk' means the 'potential harm to the child must be severe, and the level of risk and danger very high.'"  *West v. Dobrev*, 735 F.3d 921, 931 (10th Cir. 2013) (citing *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013)) (alterations omitted).

Respondent argues that expert testimony on the impact of relocation to New Zealand is necessary for the Court to evaluate her argument that the relocation presents an "aggregation of adjustment issues" that will result in grave psychological harm to A.C.S.  Docket No. 32 at 6.  These issues include: "(1) a fundamental poverty commensurate with moving to another country without a home or job prospects or any likelihood of financial support for A.C.S.; (2) an absentee father who has no ability or intention to participate in raising A.C.S.; (3) a situation where the Parties will be unable to meet A.C.S.'s basic needs; and (4) familial circumstances that are harmful to A.C.S." *Id.*  Petitioner responds that none of the issues that respondent identifies are relevant to or even permissibly considered in the Court's analysis of the grave risk exception. Docket No. 33 at 2-3.

The Court finds that the parties' finances and familial circumstances–the first, third, and fourth issues raised by respondent–are irrelevant to the Court's determination of whether relocation poses a grave risk of harm to A.C.S., and that expert testimony as to the psychological effects of those circumstances is therefore irrelevant.  As petitioner points out, the State Department's analysis of the grave risk exception specifically

6

forecloses consideration of the parties' financial situation upon relocation.  Public Notice 957, 51 Fed. Reg. 10494, 10510 (Mar. 26, 1986); *see also Krefter v. Wills*, 623 F. Supp. 2d 125, 136-37 (D. Mass. 2009) ("a mere shortage of money is not, on its own, sufficient to establish an '*intolerable situation*'") (emphasis in original); *Cook v. Scott*, 2008 WL 2947692 at *5 (E.D. Mich. July 31, 2008) ("an 'intolerable situation' does not encompass return to a home where money is in short supply") (citation and quotation omitted).

As to respondent's claim that "familial circumstances that are harmful to A.C.S." are relevant to the grave risk exception, the Court finds that any evaluation of "familial circumstances" would concern A.C.S.'s best interests, not respondent's affirmative defense.  *West*, 735 F.3d at 932 (noting that the "underlying premise" of the Convention is for "wrongfully removed or retained children [to] be promptly returned to their country of habitual residence . . . so that a court there may resolve custody-related questions in the best interests of the children.").  While the Court has no doubt that poverty and lack of familial support place developmental stresses on children, and that an expert may testify that those stresses have psychological effects, the Court's role in a petition filed under the Convention is not to determine the best situation for the child.  *Danaipour*, 286 F.3d at 13-14.  The Convention does not invite or empower the Court to discriminate against petitioners on the basis of wealth or familial ties.  For the Court to hold that a petitioning parent's poverty or relative lack of family support rises to the level of an intolerable situation would expand the grave risk exception beyond its intended narrow scope of protecting children from a high risk of grave harm.  *See* 51 Fed. Reg. at 10510 (noting that the risk to the child must be "grave, not merely serious" for the

exception to apply).

Respondent cites *Steffen F. v. Severina P.*, 966 F. Supp. 922, 926-27 (D. Ariz. 1997), a case in which expert testimony was admitted to assess the psychological effects of ordering relocation.  Docket No. 32 at 5.  In that case, the court considered expert testimony concerning the psychological harm that a child would suffer from being unbonded from his mother as a result of a relocation order.  *Id.* at 927.  Citing testimony that unbonding often results in long-term psychological problems, the *Steffen F.* court found that the respondent had met her burden of proving grave risk by clear and convincing evidence.  *Id.* at 928.  In so holding, the *Steffen F.* court explicitly departed from the standard articulated in *Friedrich* and found that the grave risk exception applies whenever evidence shows a substantial risk of psychological harm.  *See id.* at 927.  The Court need not decide between the test outlined in *Friedrich* or the more expansive approach used in *Steffen F*, however.  Respondent does not suggest that her expert will testify regarding the effects of "unbonding."  As discussed above, the financial and familial issues respondent identifies go to the merits of the underlying custody dispute and do not rise to the level of a high risk of grave psychological harm.

Respondent also argues that the Court should consider all of the factors that may present a risk of psychological harm or otherwise create an intolerable situation in the aggregate.  Docket No. 32 at 5-6.  In support of this approach, respondent cites *Didur v. Viger*, 392 F. Supp. 2d 1268, 1273 (D. Kan. 2005), *rev'd and remanded on other grounds*, 197 F. App'x 749, 753 (10th Cir. 2006).   *Didur*, however, concerned substantially different facts than this case and does not support respondent's argument

that expert testimony into the totality of circumstances of A.C.S.'s return to New

Zealand is relevant. *Didur* considered the aggregated effect of independent

characteristics of the petitioning parent that contributed to an overall atmosphere of

abuse and neglect, including depression, alcoholism, sexual abuse, and "inability to

adjust." *Id.* at 1273. The *Didur* court found that while no individual issue identified

would satisfy the grave risk exception, "in conjunction with all the other factors, they

become legally significant." *Id.* In *Didur*, each issue considered was independently

relevant to determine the petitioner's "repeated neglect of [the child] and her emotional

instability as a parent," *id.*, and aggregation simply assisted the court in determining

whether that abuse and neglect rose to the level of a grave risk of harm. Here, by

contrast, respondent seeks to use aggregation to bootstrap areas of inquiry that would

not otherwise be relevant to the Court's analysis. Accepting respondent's approach

would expand the scope of the grave risk exception in a manner not contemplated by

*Didur*.

Because financial and familial circumstances are not relevant to application of

the grave risk exception, the Court will grant plaintiff's motion to exclude expert

testimony on the psychological effects of those circumstances.

Having determined that financial and familial circumstances are not relevant to

the Court's analysis of the grave risk exception, the Court now turns to the final issue

that respondent claims requires expert testimony: petitioner's involvement in A.C.S.'s

life. Respondent characterizes petitioner as "an absentee father who has no ability or

intention to participate in raising A.C.S.," Docket No. 32 at 6, and says that petitioner

9

has not had "any role in A.C.S.'s life since at least May 2013." *Id.* at 3.  Petitioner notes that May 2013 was shortly after respondent and A.C.S. traveled to the United States from New Zealand, and that giving any weight to criticism of petitioner's involvement with A.C.S. after respondent brought A.C.S. to the United States against petitioner's will would be rewarding respondent for the unlawful retention.  Docket No. 33 at 3.

The Court finds that respondent has not met her burden of showing that expert testimony is relevant to the Court's determination of whether the grave risk exception applies in this case.  *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) ("The burden of establishing . . . helpfulness rests on the proponent of the expert opinion").  In support of the proposed expert testimony, respondent offers only that petitioner has been an absentee parent since the time respondent brought A.C.S. to the United States.  Respondent provides no details as to why petitioner's relative lack of involvement in A.C.S.'s life from afar reflects an inability or unwillingness to care for A.C.S. in New Zealand.  Nor has respondent identified any circumstances that could lead the Court to conclude that petitioner's lack of involvement in A.C.S.'s life since May 2013 creates a risk of "serious abuse or neglect" upon return to New Zealand or that the courts of New Zealand are "incapable or unwilling to give the child adequate protection." *Friedrich*, 78 F.3d at 1069.  Moreover, respondent has given no indication of what her proposed expert would say as to the psychological risk to A.C.S. of relocation to New Zealand beyond vague references to the parties' respective financial and family situations.  Given the absence of detail about the proposed testimony, the Court is unable to determine what, if any, weight to give it.

10

## III.  CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Petitioner Anthony Leigh Stead's Motion to Preclude Irrelevant

Expert Report(s) And Testimony [Docket No. 29] is **GRANTED**.


DATED December 3, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge