IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 14-cv-01400-PAB-KMT

IN RE THE APPLICATION OF ANTHONY LEIGH STEAD,

     Plaintiff/Petitioner

v.

DAVINA MENDUNO,

     Defendant/Respondent.

---

**ORDER**

---

This matter comes before the Court on Petitioner Anthony Leigh Stead's Petition for Return of the Child (the "petition") brought pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention")[1] and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001 *et seq.* The Court held an evidentiary hearing on the petition on December 18-19, 2014. Both parties presented testimony and tendered exhibits. The Court has jurisdiction pursuant to 22 U.S.C. § 9003(a) and 28 U.S.C. § 1331. For the reasons outlined at the hearing , the Court granted the petition. The Court makes the following supplemental findings.

A.C.S. was born to petitioner, a New Zealand citizen, and respondent, a United States citizen, on October 21, 2011. Petitioner Ex. 4. Petitioner and respondent lived together during respondent's pregnancy, but separated shortly after A.C.S.'s birth, after which time respondent served as A.C.S.'s primary caretaker. After petitioner and

---

[1] *Available at* http://www.hcch.net/upload/conventions/txt28en.pdf.  All references in this Order to "Article" refer to articles of the Convention.

respondent separated in early 2012, petitioner provided approximately $200 per week in financial support for respondent and A.C.S. until approximately October 2012.  After October 2012, petitioner ceased providing financial support and instead began caring for A.C.S. during much of the day so that respondent could work.

In May 2013, respondent brought A.C.S. to the United States with petitioner's consent so that A.C.S. could meet respondent's family.  Respondent bought a round-trip ticket with a return date of September 29, 2013.  Before giving his consent to the overseas trip, petitioner demanded assurances that respondent would return to New Zealand with A.C.S. no later than September 2013.  Respondent gave such assurances.

Between May and September 2013, petitioner had no contact with A.C.S., though respondent remained in contact with petitioner's family and provided periodic updates on their trip.  On September 23, 2013, respondent informed petitioner's mother that she and A.C.S. would not be returning to New Zealand as she originally promised.  On November 4, 2013, petitioner filed in New Zealand an Application in Accordance with the Hague Convention on the Civil Aspects of International Child Abduction for the Return of Child Abducted from New Zealand.  Petitioner's Ex. 1 at 27-31. Subsequently, petitioner retained counsel in the United States and brought this action.

## I.  ANALYSIS

### A.  Petitioner's Prima Facie Case

As a preliminary matter, the parties stipulate that A.C.S. is under the age of sixteen and that both New Zealand and the United States are signatories to the

Convention.  Thus, there is no dispute that the Convention applies in this matter.

ICARA provides that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions set forth in the Convention applies."  22 U.S.C. § 9001(a)(4).  To establish wrongful removal, "[p]etitioner's prima facie case consist[s] of three elements[:] (1) the child[] habitually resided in [New Zealand] at the time of the[] retention, (2) such retention breached petitioner's custody rights under the law of [New Zealand], and (3) [p]etitioner was exercising those rights at the time of retention."  *West v. Dobrev*, 735 F.3d 921, 929 (10th Cir. 2013).  Petitioner has the burden to prove that the child has been wrongfully removed or retained within the meaning of the convention by a preponderance of the evidence.  22 U.S.C. § 9003(e)(1)(A).

### 1.  *Habitual Residence*

The Court finds that A.C.S. habitually resided in New Zealand before respondent retained him in the United States.  The term "habitual residence" is deliberately not defined in the Treaty or ICARA.  *See Holder v. Holder,* 392 F.3d 1009, 1015 (9th Cir. 2004).  Rather "[c]ourts have widely recognized that the term should therefore be interpreted according to the ordinary and natural meaning of the two words it contains, as . . . decided by reference to all the circumstances of any particular case."  *Guzzo v. Cristofano*, 719 F.3d 100, 106 (2d Cir. 2013) (internal quotation marks omitted).  While courts have supplied no uniform definition of "habitual residence," in *Mozes v. Mozes*, 239 F.3d 1067, 1076 (9th Cir. 2001), Chief Judge Alex Kozinski of the Ninth Circuit Court of Appeals formulated a distinct approach to habitual residence questions,

focusing on the importance of parental intentions: "the intention or purpose which has to be taken into account is that of the person or persons entitled to fix the place of the child's residence." *Id.* at 1075-76. Where the family has "manifested a settled purpose to change habitual residence," then courts should find that the child's habitual residence has been changed, but where "the child's initial translocation from an established habitual residence was clearly intended to be of a specific, delimited period," then the habitual place of residence will not be found to have changed, unless that period of time is "too long to expect children to live abroad without acquiring habitual residence." *Id.* at 1076-77 & n.27.

The evidence shows that A.C.S. lived in New Zealand his entire life up to the time that respondent brought him to the United States. The evidence further shows that both petitioner and respondent intended A.C.S. to live on Waiheke Island, New Zealand. Respondent testified that shortly before she and A.C.S. left New Zealand for the United States, she promised petitioner that she would return with A.C.S. in September 2013 and that, upon her return, the parties would put together a parenting plan. Petitioner's Ex. 9 at 435. Respondent's only rebuttal to the evidence that A.C.S.'s parents intended him to reside in New Zealand is that, when she and petitioner began dating and discussing having a child, they intended to buy a boat and sail around the world and had intentions of visiting the United States at some point. The Court finds that these vague plans do not rebut the clear intention of both respondent and petitioner at all relevant times that A.C.S. would reside in New Zealand.

## 2. Breach of Petitioner's Custody Rights

The Court finds that respondent's decision to remain in the United States

4

violated petitioner's custody rights under the laws of New Zealand.  Petitioner was A.C.S.'s legal guardian under New Zealand law, both because he lived with respondent during the time between A.C.S.'s conception and his birth and because he is listed on A.C.S.'s birth certificate as the child's father.  *See* Petitioner's Ex. 1 at 20; *see also* New Zealand Care of Children Act ("CCA") §§ 17(1)-(2).[2]  One of a guardian's custody rights under New Zealand law is the right to determine, "for or with the child, or helping the child to determine, questions about important matters affecting the child," CCA § 16(1)(c), among them "changes to the child's place of residence."  *Id.* § 16(2)(b). Respondent's unilateral decision to remain in the United States with A.C.S. notwithstanding the assurances she gave to petitioner that A.C.S. would return to New Zealand breached this right.

### 3.  *Petitioner's Exercise of Custody Rights*

"[A] person cannot fail to 'exercise' [his] custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child.  Once it determines that the parent exercised custody rights in any manner, the court should stop–completely avoiding the question whether the parent exercised the custody rights well or badly."  *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996).

Respondent argues that petitioner abandoned his custody rights because he

---

[2]Under Article 14 of the Convention, the Court "may take notice directly of the law of, and of judicial or administrative decisions, formally recognised or not in the State of the habitual residence of the child, without recourse to the specific procedures for the proof of that law or for the recognition of foreign decisions which would otherwise be applicable."  The version of the CCA currently in effect is available at http://legislation.govt.nz/act/public/2004/0090/latest/DLM317233.html.  The version that was in effect as of the date of the wrongful retention (the "2013 CCA"), is available at http://legislation.govt.nz/act/public/2004/0090/25.0/DLM317233.html.

provided no financial support since at least November 2012 and because he did not contact A.C.S. after Respondent brought him to the United States.  Docket No. 52 at 4-5.  Respondent also argues that, during the time that petitioner cared for A.C.S. so that respondent could work, petitioner viewed himself as A.C.S.'s babysitter and suggested that respondent should pay him for his work.  *Id.* at 5.  Finally, respondent argues that petitioner failed to participate in mandatory counseling provided by the New Zealand court system, which respondent had arranged for the purpose of putting together a parenting plan.

The Court finds that petitioner was exercising his custody rights at the time of the retention.  Respondent has provided no evidence that petitioner forfeited his custodial rights under New Zealand law.  The section of the CCA, since repealed, that allowed parties to request court-provided counseling, provides no indication that such counseling is mandatory.  *See* 2013 CCA § 65.  Moreover, while New Zealand appears to have amended the CCA to make family dispute resolution mandatory before parties can initiate custody proceedings, *see* CCA § 46E, the mandatory dispute resolution provision was not enacted until March 31, 2014.  *Id.*  Even under this new mandatory scheme, respondent provides no evidence that failure to participate in dispute resolution constitutes forfeiture of custody rights.

With respect to petitioner's actions after respondent and A.C.S. came to the United States, the Court finds that petitioner's failure to contact A.C.S. between May and September 2013 does not constitute the sort of "clear and unequivocal abandonment" required to find in respondent's favor on this element of plaintiff's prima facie case.  *Friedrich*, 78 F.3d at 1066.  Rather, petitioner exercised his rights of

6

custody by receiving assurances from respondent that she and A.C.S. would return. After petitioner demanded and received such assurances, the Court cannot find that petitioner's failure to renew those assurances constituted a clear and unequivocal abandonment of his custody rights.

The Convention provides that retention of a child is wrongful if, at the time of retention, petitioner was either exercising his custody rights or if those rights "would have been so exercised but for the removal or retention."  Article 3(b).  Petitioner argues, and the Court agrees, that the evidence shows that petitioner intended to resume his guardianship role in A.C.S.'s life upon the child's return to New Zealand.

For the foregoing reasons, the Court finds that petitioner has satisfied his prima facie case under the Convention.

### B.  Respondent's Affirmative Defenses

#### 1.  Grave Risk

Article 13(b) provides that a court is not bound to return a child wrongfully retained or removed if the respondent establishes that "there is a grave risk that his or her return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."  *West*, 735 F.3d at 931.  Respondent bears the burden of proving the applicability of the "grave risk exception" by clear and convincing evidence.  22 U.S.C. § 9003(e)(2)(A).

The Sixth Circuit has indicated that a grave risk of harm can only exist in two situations.  "First, there is a grave risk of harm when return of the child puts the child in imminent danger *prior* to the resolution of the custody dispute–*e.g.*, returning the child

7

to a zone of war, famine, or disease.  Second, there is a grave risk of harm in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection.  Psychological evidence . . . is only relevant if it helps prove the existence of one or these two situations" *See Friedrich*, 78 F.3d at 1069 (emphasis in original).  While the Tenth Circuit has not explicitly adopted the standard outlined in *Friedrich*, it has noted that the grave risk exception imposes a "strict demand" on the party claiming it and that "'[g]rave risk' means the 'potential harm to the child must be severe, and the level of risk and danger very high.'" *West,* 735 F.3d at 931 (citing *Souratgar v. Lee*, 720 F.3d 96, 103 (2d Cir. 2013)) (alterations omitted).

The Court finds that respondent has not met her burden of proving a grave risk to A.C.S. by clear and convincing evidence.  Respondent testified at length as to A.C.S.'s temper, including multiple outbursts and bouts of extreme jealousy.  However, respondent did not identify any instance where petitioner was physically or sexually abusive, either to her or A.C.S.  The Court is unaware of any case where a court applied the grave risk exception solely based on testimony about petitioner's general predisposition to anger.  Thus, respondent has not met her burden of showing that petitioner's temperament rises to the level of an intolerable situation or presents a grave risk of harm to A.C.S.

### 2.  Consent or Acquiescence

Article 13(a) of the Convention provides that the Court is not bound to order the

return of the child if petitioner "consented to or subsequently acquiesced in the removal or retention."  Respondent bears the burden to prove that petitioner consented or acquiesced by a preponderance of the evidence.  22 U.S.C. § 9003(e)(2)(B).  The Article 13(a) exception can apply where the record reflects "a consistent attitude of acquiescence over a significant period of time."  *Friedrich*, 78 F.3d at 1070.

Respondent argued in her pre-hearing brief that petitioner acquiesced to A.C.S.'s remaining in the United States "because he never directly denied such consent."  Docket No. 52 at 6.  At the hearing, respondent testified that petitioner had never consented to A.C.S. remaining in the United States.  Given the lack of affirmative consent and the fact that petitioner demanded assurances that A.C.S. would return at an agreed-upon time before he agreed to let respondent take the child to the United States, respondent cannot show any consent on petitioner's part.

The Court also finds that respondent cannot meet her burden of establishing acquiescence by a preponderance of the evidence.  After respondent informed petitioner's mother that she intended to remain in the United States with A.C.S., petitioner filed an application with the New Zealand authorities to initiate proceedings under the Convention.  The Court concludes that petitioner acted with reasonable diligence to secure A.C.S.'s return after discovering respondent's intention to remain in the United States and cannot conclude that the five-week period between late September 2013, when petitioner learned through his mother that respondent intended to keep A.C.S. in the United States, and November 4, 2013, when he filed his application with the New Zealand Authorities, constituted acquiescence.

9

### 3.  Other Equitable Defenses

Respondent brings a number of equitable defenses, including equitable estoppel, waiver, unclean hands, and "course of conduct."  *See generally* Docket No. 17.  At the hearing, respondent raised only the defense of waiver, based on petitioner's failure to engage with respondent in court-sponsored counseling in New Zealand.

The Tenth Circuit does not appear to have considered whether equitable defenses are permitted in a case brought under the Convention, though the Third and Fourth circuits have both held that they are not.  *See Karpenko v. Leendertz*, 619 F.3d 259, 265 (3d Cir. 2010) ("we are not aware of any authority that would support dismissal of a Hague Convention petition on grounds of unclean hands. . . .  The conduct of the parents, other than the claim of abduction or retention, is not mentioned in the Hague Convention except to the extent that [it] may be relevant to one of the affirmative defenses."); *see also Katona v. Kovacs*, 148 F. App'x 158, 161 (4th Cir. 2005) ("we have found nothing to support the district court's application of the doctrine of equitable estoppel to the Convention").  The Court agrees with the reasoning of *Katona* and *Karpenko*.  ICARA provides that "[c]hildren who are wrongfully removed or retained within the meaning of the Convention are to be promptly returned unless one of the narrow exceptions *set forth in the Convention* applies."  22 U.S.C. § 9001(a)(4) (emphasis added).  The equitable doctrines invoked by respondent are not mentioned in the Convention and are therefore not properly brought as defenses to a petition for return of the child.  The Court therefore declines to entertain respondent's equitable defenses.  However, even if the Court considered the only equitable defense that

respondent raised at the hearing, waiver, the Court would reject it.  Petitioner's failure to engage fully in voluntary counseling did not waive his custodial rights under the CCA.

### C.  Attorneys' Fees and Costs

ICARA provides that any court ordering the return of a child pursuant to ICARA and the Convention "shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate."  22 U.S.C. § 9007(b)(3).  Section 9007(b)(3) provides district courts with "broad discretion" with respect to fees and costs "in its effort to comply with the Hague Convention consistently with our own laws and standards."  *West*, 735 F.3d at 932.

At the hearing, petitioner indicated that they did not intend to seek attorneys' fees,[3] but did intend to seek costs, including the costs of travel, court filing fees, and deposition costs.  Respondent argues that an award of any costs would be clearly inappropriate, both because respondent lacked any malicious intent in retaining A.C.S. in the United States and because any award of costs would put respondent in debt for the rest of her life.

The Court finds that an award of filing fees and deposition costs is inappropriate in this matter, given the petitioner's pro bono representation and respondent's relatively

---

[3]The Court notes that both petitioner and respondent are represented in this matter on a pro bono basis.  While pro bono representation does not automatically make an award of fees clearly inappropriate, *see Cuellar v. Joyce*, 603 F.3d 1142, 1143 (9th Cir. 2010), pro bono representation "is a factor that cuts against any such award." *Vale v. Avila*, 2008 WL 5273677 at *2 (C.D. Ill. Dec. 17, 2008).

low salary, total savings of slightly over $2,000, the fact that respondent spends 80% of her income on housing, and the fact that most of her other expenses relate to providing for A.C.S. The Court does, however, find that an award of petitioner's airfare to and from the hearing is appropriate.

## II. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that petitioner Anthony Leigh Stead's Petition for Return of the Child [Docket No. 1] is **GRANTED**. It is further

**ORDERED** that respondent shall ensure that A.C.S. is returned to New Zealand on a flight departing on or before January 15, 2015. It is further

**ORDERED** that, no later than seven days before the date of A.C.S.'s departure for New Zealand, respondent shall file under level one restriction with the Court a notice that informs petitioner of the details of A.C.S.'s return flight to New Zealand. It is further

**ORDERED** that petitioner's request for costs is **GRANTED IN PART**. Within fourteen days of this Order, petitioner shall file with the Clerk of Court a bill of costs. Such bill of costs is to include those costs associated with petitioner's airfare to and from the United States for the December 18-19, 2014 evidentiary hearing. To the extent petitioner seeks any costs other than airfare, such request is **DENIED**. It is further

**ORDERED** that this case is closed.

DATED December 29, 2014.

BY THE COURT:


 s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge